WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Jackson Ellsworth,<br><br>   Plaintiff,<br><br> vs.<br><br>Nurse Rose, et al.,<br><br>   Defendants. | No. CV 11-2554-PHX-RCB (MEA)<br><br>**O R D E R** |

Plaintiff James Jackson Ellsworth, who is confined in the Arizona State Prison Complex in Florence, filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983. (Doc. 1.) Defendants Nurse Rose Dacumos, Nurse Judith Jimenez, and Facility Health Administrator (FHA) Dennis Kendall move for summary judgment,[1] and Plaintiff opposes. (Docs. 24, 36.)

The Court will grant the motion in part and deny it in part.

**I.   Background**

In his Complaint, Plaintiff alleges that he suffers from multiple sclerosis (MS) and that in October 2010 a doctor prescribed the use of a cane to assist with Plaintiff's mobility. He contends that he repeatedly requested a cane from Defendants, but Defendants would not follow the doctor's instructions and did not provide a cane.

---

[1] The Court provided Plaintiff notice pursuant to *Rand v. Rowland*, 154 F.3d 952, 960 (9th Cir. 1998), regarding his obligation to respond. (Doc. 26.)

1  Plaintiff asserts that he fell in December 2010, split his head open, and had to be
2  transported to the hospital for stitches.

3      The Court determined on screening pursuant to 28 U.S.C § 1915A, that Plaintiff
4  stated an Eighth Amendment claim against Defendants, and the Court directed them to
5  answer the Complaint.  (Doc. 5.)

6      In support of their motion, Defendants submit their Statement of Facts (Doc. 25
7  (DSOF)), their declarations with attachments, including medical records and grievance
8  documents (Exs. B-D).  In opposition, Plaintiff submits his response (Doc. 36), his
9  Statement of Facts (Doc. 37 (PSOF)), and his affidavit with exhibits (Doc. 38).

10     Defendants move for summary judgment on the grounds that there was no Eighth
11 Amendment violation, they are entitled to qualified immunity, and the official-capacity
12 and punitive damages claims should be dismissed.  (Doc. 24.)

13 **II.   Motion for Summary Judgment**

14     **A.    Legal Standards**

15         **1.    Summary Judgment**

16     A court "shall grant summary judgment if the movant shows that there is no
17 genuine dispute as to any material fact and the movant is entitled to judgment as a matter
18 of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23
19 (1986).  Under summary judgment practice, the moving party bears the initial
20 responsibility of presenting the basis for its motion and identifying those portions of the
21 record, together with affidavits, which it believes demonstrate the absence of a genuine
22 issue of material fact. *Id.* at 323.

23     If the moving party meets its initial responsibility, the burden then shifts to the
24 opposing party who must demonstrate the existence of a factual dispute and that the fact
25 in contention is material, i.e., a fact that might affect the outcome of the suit under the
26 governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the
27 dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict
28 for the non-moving party. *Id.* at 250; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 586-87 (1986). The opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968).

When considering a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits or declarations, if any. *See* Fed. R. Civ. P. 56(c). At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But, if the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 248-49. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment").

### 2. Medical Care

To prevail on a claim under the Eighth Amendment for prison medical care, a prisoner must demonstrate "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. *Jett*, 439 F.3d at 1096 (citations omitted). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511

1 U.S. 825, 837 (1994). Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096.

But mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983. *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980). Inadequate treatment due to malpractice or even gross negligence does not constitute an Eighth Amendment violation. *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. Moreover, differences in judgment between an inmate and prison medical personnel regarding an appropriate medical diagnosis or treatment are not enough to establish a deliberate-indifference claim. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

### B. Parties' Contentions

#### 1. Facts

The record shows the following disputed and undisputed facts:

Dacumos is a Certified Registered Nurse (CRN). (DSOF ¶ 2.) Jimenez is a Licensed Practical Nurse (LPN), employed by the ADC since May 12, 2003. (DSOF ¶ 3.) Neither Defendant had the authority to issue a cane or other walking device to an inmate prior to an examination by a Health Care Provider (HCP) and the issuance of a Special Needs Order (SNO). (DSOF ¶¶ 2-3.) Plaintiff asserts that both Defendants determine if an inmate can see a doctor and that both have the authority to issue SNOs. (PSOF ¶¶ 2-3.) Kendall was the FHA for both ASPC-Florence and ASPC-Eyman from November 2008 until July 2011; he is not a licensed medical professional, has no specialized medical training, does not develop treatment protocols, nor has he ever treated inmates. (DSOF ¶ 4.) As the FHA, Kendall was not authorized to override an HCP's recommended course of treatment for an inmate. (DSOF ¶ 4.) Plaintiff asserts that Kendall has the duty to ensure prompt and appropriate medical care. (PSOF ¶ 4.)

To request health care, inmates must submit a Health Needs Request form (HNR) indicating the issue they need addressed. (DSOF ¶ 10; PSOF ¶ 10.) The staff refer, schedule, and respond as appropriate, and the action taken depends on the issue. (DSOF ¶ 13.) Plaintiff disputes that appropriate referrals were made in his case. (PSOF ¶ 13.) Generally when an inmate requests medical attention, he is scheduled to be seen on the Nurse's Line before being seen by a HCP (i.e. a doctor or licensed nurse practitioner). (DSOF ¶ 14.) Inmates with certain chronic conditions are seen periodically on a pre-scheduled basis for their particular chronic issue. Medical decision-making, including assessment, diagnosis, and treatment recommendations, are made by licensed HCPs, who may be physicians or mid-level providers. (DSOF ¶ 15.) The FHAs have never been authorized to override an HCP's recommended course of treatment for an inmate. (*Id*.) Plaintiff asserts that nurses are frontline medical personnel and that assessment is a routine part of their duties. (PSOF ¶ 15.)

On July 30, 2010, Plaintiff was seen by Dr. Jeffery Sharp, who issued an SNO continuing Plaintiff's lower bunk assignment and altering his work status and diet. (DSOF ¶ 16.) Plaintiff disputes that he was seen by Sharp or that Sharp issued the SNO. (PSOF ¶ 16.) The SNO does not mention the need for a cane or other walking device. (DSOF ¶ 16.) On October 4, 2010, Plaintiff submitted an HNR, complaining that he needed a refill of a prescription because his MS was acting up and he was losing his balance. (DSOF ¶ 17; PSOF ¶ 17.) He did not request a cane. (DSOF ¶ 17.) Plaintiff asserts that he was not seen on the Nurses' Line. (PSOF ¶ 17.) On October 7, Plaintiff submitted an HNR regarding a different prescription, complaining that his MS was acting up, and that he is losing his balance a lot. (DSOF ¶ 18; PSOF ¶ 18.) Plaintiff asserts that the only response to this was faxed and there was no treatment or assessment. (PSOF ¶ 18.) On October 18, 2010, Plaintiff submitted an HNR regarding a prescription, complaining about his balance, and stating that he had fallen at work. (DSOF ¶ 19; PSOF ¶ 19.) Plaintiff asserts that this HNR was not stamped until October 20---48 hours later. (PSOF ¶ 19.)

1    On October 21, Plaintiff was seen by medical staff and prescribed Elavil 50 mg; Defendants assert that there is no indication that a cane was discussed or was necessary for his treatment. (DSOF ¶ 20.) Plaintiff asserts that he informed Sharp that he still did not have the cane and that Sharp indicated that he was under the impression that it had been ordered and would look into it. (PSOF ¶ 20.) On November 16, Plaintiff submitted an HNR, complaining of pain and problems walking and asking for a cane. (DSOF ¶ 21; PSOF ¶ 21.) Plaintiff asserts that he was not seen on the Nurses' Line. (PSOF ¶ 21.) November 22, he submitted an HNR, complaining of nerve pain and again asking for a cane. (DSOF ¶ 22; PSOF ¶ 22.) Plaintiff alleges that Dacumos told him that it was still pending approval and that it was ordered, referring to the medication. (PSOF ¶ 22.)

On December 7, Plaintiff submitted an HNR stating that a cane had been ordered for him and asking when he would get it. (DSOF ¶ 24.) The response said the request had already been refused and referred him to a HCP. (DSOF ¶ 24.) Plaintiff asserts that nothing had been refused. (PSOF ¶ 24.)[2] On December 15, Plaintiff was seen by medical staff; although Plaintiff noted balance problems with tilting hips, Dr. Sharp did not issue a SNO for a cane. (DSOF ¶ 25.) Plaintiff asserts that they discussed the cane. (PSOF ¶ 25.)

On December 21, Plaintiff submitted an HNR. (DSOF ¶ 26, Doc. 25-2 at 29.) Defendants claim that Plaintiff sought approval for a wheelchair. Plaintiff alleges that after consulting with his family, he put in an HNR for a cane to be ordered from outside; he never asked for a wheelchair. (PSOF ¶¶ 26, 27.)[3] In response, nursing staff requested a medical evaluation to determine the need for a wheelchair. (DSOF ¶ 27.) On December 26, Plaintiff was seen by medical staff because he reported that he fell and hit his head in the restroom; he was taken to Florence Regional Hospital for sutures. (DSOF

---

[2] In their reply, Defendants acknowledge that the notation may be "referred" not "refused." (Doc. 47 at 16.)

[3] In their reply, Defendants acknowledge that the request was for a cane, not a wheelchair. (Doc. 47 at 16-17.)

1  ¶ 28; PSOF ¶ 28.)  On or about December 27, 2010, Plaintiff was offered a walker, which
2  he refused, and an SNO was issued providing Plaintiff with a cane until December 31,
3  2010.  (DSOF ¶ 30.)  Plaintiff asserts that he never refused a walker and, in fact, accepted
4  a walker but staff could not obtain one, so the SNO was changed to a cane.  (PSOF ¶ 30.)
5  He received a four-legged cane, and the SNO was issued by an RN.  (*Id.*)  On December
6  29, he was issued an SNO for a cane for a year.  (*Id.* ¶ 31.)

7  Plaintiff asserts that he and Kendall had a face-to-face discussion concerning his
8  cane, and Kendall said that a cane was not available.  (PSOF ¶ 37; Doc, 38, Pl. Aff. ¶ 25.)
9  Plaintiff also asserts that he spoke with Dacumos and Jimenez during the time allotted for
10 his shot and at medication call; Dacumos said there was nothing she could do and that he
11 would have to wait because ADC did not have canes.  (PSOF ¶ 41.)  Jimenez also said
12 there was nothing she could do and became belligerent, telling Plaintiff to quit asking.
13 (*Id.*)

14 In their reply, Defendants contend that RNs can issue temporary 72-hour SNOs
15 during after hours, weekend, or acute care situations if no HCP is available to see the
16 inmate.  (Doc. 47 at 5, Campbell Decl. ¶ 5.)  They cannot issue SNOs for chronic care
17 situations without prior HCP evaluation and authorization, which must be documented.
18 (*Id.*)  By state law, LPNs cannot issue SNOs.  (*Id.*)  The SNO issued by RN Giambrone
19 on December 27 was a temporary SNO, issued after Plaintiff fell on Sunday, December
20 26.  (*Id.*)  According to Defendants, it was issued for a period longer than 72 hours,
21 which may have been necessary due to the holiday schedule and if no HCP was available.
22 (*Id.* at 5-6.)  Defendants state that it is possible that the SNO was issued pursuant to an
23 HCP's authorization that was "inappropriately not recorded."  (*Id.* at 6.)   They further
24 contend that because Plaintiff's SNO related to chronic care, Dacumos did not have the
25 authority to issue a cane or other walking device because she did not have authorization
26 for an HCP.  (*Id.* at 6.)
27 ///
28 ///

### 2. Arguments

Defendants assert that Plaintiff's Eighth Amendment rights were not violated because he cannot establish anything more than a disagreement with health care professionals' treatment recommendations. (Doc. 24 at 12.) There was no indication that on July 30, when Plaintiff was seen by Sharp that Plaintiff needed a cane or other ambulatory device. (*Id.*) On October 4, Plaintiff submitted an HNR, asking when he would be starting medication for his MS and stating that he was *starting* to have "problems" walking and with balance. (*Id.*)  Dacumos referred him to the Nurses' Line for the prescription. (*Id.* at 12-13.)  According to Defendants, both Defendants and Plaintiff appeared to believe that his balance issues were linked to his medication. Healthcare staff treated Plaintiff by increasing his Elavil prescription to 50 mg on October 15, 2010, and 100 mg on December 15, 2010.  Defendants assert that the medical records do not reflect any medical need for a walking device prior to December 26, 2010. (*Id.*)

Defendants argue that Dacumos' involvement was limited to the review of Plaintiff's October 4, 2010 and November 22, 2010 HNRs. (*Id.*)  In both instances, she responded appropriately, referring him to the Nurse's Line and/or HCP for issuance of his prescription and evaluation by an HCP. Dacumos does not recall having any discussions with Plaintiff regarding the issuance of a cane or unavailability of a cane. Dacumos did not have the authority to issue a cane or other walking device prior to an examination by an HCP and the issuance of an SNO.  Once a cane was determined to be necessary, it was promptly issued. Dacumos took appropriate steps to ensure that Plaintiff received any necessary medical treatment, and she cannot be held liable for failing to provide treatment beyond her authority or for unknown conditions. (*Id.*)

According to Defendants, Jimenez does not appear to have any involvement in this matter, as she is not noted in his medical records and does not recall having any discussions with Ellsworth regarding the issuance of a cane or unavailability of a walking device. (*Id.* at 14.)  Jimenez did not have the authority to issue a cane or other walking

device prior to an examination by a HCP and the issuance of an SNO.  Based upon Plaintiff's medical records, there is no reason to believe that Jimenez had any knowledge of Plaintiff's request for a cane.  (*Id.*)

Kendall's only contact with Plaintiff was through the inmate grievance process, two months after Plaintiff fell.  (*Id.* at 15.)  Kendall had no knowledge of Plaintiff's medical condition, treatment or need for a walking device prior to the filing of the grievance on February 20, 2011.  (*Id.*)

Defendants argue that the Eleventh Amendment bars a monetary claim against Defendants in their official capacity, and the claim for punitive damages should be dismissed because Plaintiff has absolutely no evidence that Defendants acted with evil motive or callous indifference to his rights.  (*Id.* at 14-15.)  Defendants also assert that they are entitled to qualified immunity.  (*Id.* at 16-17.)

In their reply, Defendants reiterate their arguments and submit extensive objections to PSOF.  (Doc. 47.)

Plaintiff argues that the nurse Defendants had the authority to issue an SNO and a cane.  (Doc. 36 at 6-7.)  On October 4, Plaintiff complained about difficulty with his balance but was not seen on a Nurses' Line.  (*Id.* at 11.)  On October 7, he again complained about his balance but the only response was "faxed"; no doctor appointment was scheduled.  A November 16 HNR for a cane was ignored.  (*Id.* at 12.)  Plaintiff asserts that "medical" was aware of his mobility problems since his intake into ADC.  (*Id.* at 25.)  He had face-to-face conversations with all three Defendants.  (*Id.*)  Dacumos and Jimenez had actual knowledge because Plaintiff spoke with them.  (*Id.* at 26.)  He is sure that both of them handled the HNRs; although Jimenez claims that she never dealt with the HNRs, some are not signed and it could have been Jimenez.  (*Id.*)

Plaintiff argues that he did not receive reasonably adequate medical care.  (*Id.* at 26-29.)  He asserts that when HNRs are reviewed, staff must prepare a "Health Services Appointment List Delivery/Receipt Log" for each work day.  (*Id.* at 28.)  He argues that this was not done because they are not part of the record.  Defendants did nothing until

Plaintiff got hurt and this is not a professional standard. (*Id.*) A trained medical professional was aware or should have been aware of the danger and that he needed some kind of assistive device. (*Id.* at 29.) Plaintiff notes that in Director Ryan's response to Plaintiff's grievance appeal, Ryan stated that Plaintiff had submitted requests for a cane because of balance problems and there is no documentation that medical staff offered him any ambulatory assistive device before December 27 despite Plaintiff's repeated requests for a cane. (*Id.* at 29-30.) Ryan wrote "please be assured that corrective action will be undertaken." (*Id.* at 30, Ex. 3-K.) Plaintiff argues that if the Director is going to take corrective action, Plaintiff has met his burden to show deliberate indifference. (*Id.* at 30.)

### C.     Analysis

The Court will grant summary judgment to Kendall and Jimenez and deny summary judgment to Dacumos.

#### 1.     Preliminary Issues

Defendants ask the Court to deem DSOF admitted or to disregard all of Plaintiff's additional facts because he did not comply with Federal Rule of Civil Procedure 56(c) or Local Rule of Civil Procedure 56.1(b). (Doc. 47 at 10.) The Court declines to do so. Plaintiff has clearly disputed some of the facts asserted by Defendants and has provided some supporting evidence for the matters he alleges in his opposition. *Pro se* pleadings are liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (courts should construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly); *Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003) ("[c]ourts have a duty to construe pro se pleadings liberally, including pro se motions"). To the extent that Defendants object to evidence relied on, the objections are overruled.

#### 2.     Eighth Amendment Violation and Qualified Immunity

##### a.     Kendall and Jimenez

To prevail on a claim under § 1983, a plaintiff must demonstrate that he suffered a specific injury as a result of specific conduct of a defendant and show an affirmative

1  link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362,
2  371-72, 377 (1976).  As noted, to prevail on an Eight Amendment claim for medical
3  care, a plaintiff must demonstrate a sufficiently serious medical need and that the
4  defendant's response to that need was deliberately indifferent. *Jett*, 439 F.3d at 1096. It
5  is not enough to merely show that the "medical staff" or the "medical unit" failed to
6  provide Plaintiff a cane; to survive summary judgment, Plaintiff must demonstrate a
7  triable issue of fact regarding whether each Defendant was deliberately indifferent. The
8  Court must focus on whether each individual Defendant was in a position to take steps to
9  avert the harm, but failed to do so intentionally or with deliberate indifference.  *See Leer*
10 *v. Murphy*, 844 F.2d 628, 633-34 (9th Cir. 1988).

11  The Court will dismiss Kendall because there is insufficient probative evidence
12 that he knew of Plaintiff's need for a cane and ignored the danger of not providing one or,
13 if he did know, that he could have taken corrective action. Kendall asserts that he was
14 unaware of the situation until he responded to a grievance appeal after Plaintiff had
15 fallen. Plaintiff asserts that he had a discussion with Kendall about the cane, but he does
16 not state when the discussion took place or provide any detail about what he told Kendall
17 about his condition or why he needed a cane. Moreover, it is undisputed that Kendall is
18 not a health care provider and could not have issued an SNO or a cane.

19  The Court will also dismiss Jimenez. She attests that she did not review Plaintiff's
20 HNRs. Although Plaintiff speculates that she may have, in fact, reviewed some of the
21 unsigned HNRs, his speculation is insufficient to create a triable issue of fact.
22 Conclusory allegations, unsupported by factual material, are insufficient to defeat a
23 motion for summary judgment. *Taylor*, 880 F.2d at 1045; s*ee Soremekun v. Thrifty*
24 *Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("[c]onclusory, speculative testimony in
25 affidavits and moving papers is insufficient to raise genuine issues of fact and defeat
26 summary judgment"). Plaintiff attests that he spoke with Jimenez about the cane, but it is
27 unclear when he did that and it does not appear to have been in connection with any of
28 his HNRs.

   **b.**  **Dacumos**

  The Court will, however, deny summary judgment to Dacumos. The undisputed evidence shows that she reviewed two of Plaintiff's HNRs: the first on October 4 and the second on November 22, 2010. On October 4, Plaintiff asked when he would be starting the medications for his MS and complained that he was having nerve pains and problems with balance and walking. (Doc. 25-1 at 29.) On November 22, Plaintiff asked when or if he would be starting Gabapentin and stated "[t]he nerve pain is getting worse and if I could get a [cane] to help me walk. My RT leg is getting worse and my balance is bad." (*Id.* at 26.) She reviewed this on November 29, noted "still pending approval if it was ordered," and for "Plan of Action" wrote "I reviewed your file and gabapentin was not ordered. Doctor will review your file." (*Id.*) She does not mention the cane or any plan of action regarding Plaintiff's request for a cane or issues with his balance and walking.

  Although Defendants claim that Dacumos could not order a cane for Plaintiff, their evidence is incomplete and inconsistent. They assert that there are very specific restrictions on RNs issuing SNOs for a cane: specifically, RNs can issue temporary 72-hour SNOs during after hours, weekend, or acute care situations if no HCP is available to see the inmate, and they cannot issue SNOs for chronic care situations without prior HCP evaluation and authorization, which must be documented. They cite to the declaration of Kathleen Campbell, a registered nurse and certified correctional health professional. (Doc. 47 at 5, Ex. 1, Campbell Decl. ¶ 1, 5.)

  But Campbell provides no authority for the alleged restriction; it is unclear if Defendants are asserting this is a state-law restriction, as they claim regarding the scope of duties of licensed practical nurses (*see id.*, Campbell Decl. ¶ 5), or if it is ADC policy. Dacumos attests that because Plaintiff's HNRs related to chronic care conditions, she did not have authority to issue him a cane or other walking device. (Doc. 47, Ex. 2, Dacumos Supp. Decl. ¶ 5.) But the record shows that RN Giambrone issued an SNO for Plaintiff on December 27. (Doc. 25-1 at 22.) Presumably Plaintiff's need for a cane on December 27 related to the same chronic condition to which Dacumos refers. And

- 12 -

1  Campbell also attests that Giambrone's SNO may have been "necessary if no health care
2  provider was available to see the inmate."  (Doc. 47, Campbell Decl. 7.)  This suggests
3  that at least a temporary SNO can be issued if no health care provider was available to
4  see Plaintiff.  The record does not show if a health care provider was available to see
5  Plaintiff on November 29, when Dacumos reviewed Plaintiff's November 22 HNR.  The
6  record does show that her Plan of Action in response to the HNR did not mention the
7  request for a cane.  And Plaintiff was not seen by a doctor until December 15.  (DSOF ¶
8  25.)   It appears that Dacumos neither issued a temporary SNO, contacted a health care
9  provider for immediate evaluation, or even requested in her plan of action an emergency
10 evaluation of Plaintiff's need for a cane.  Although a mere difference of opinion as to
11 which medically acceptable course of treatment should be followed does not establish
12 deliberate indifference, s*ee Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989), Dacumos
13 does not claim that she assessed the situation and determined that Plaintiff did not need a
14 cane.   Moreover, one was provided less than a month later after Plaintiff fell and injured
15 his head, necessitating a trip to the hospital.

16     Defendants do not seriously dispute that Plaintiff had a serious medical need.  The
17 Court finds that Plaintiff, who has MS and who complained several times of loss of
18 balance and difficulty walking and who requested a cane, had a serious medical need.
19 *See McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (examples of a serious
20 medical need include "[t]he existence of an injury that a reasonable doctor or patient
21 would find important and worthy of comment or treatment; the presence of a medical
22 condition that significantly affects an individual's daily activities; or the existence of
23 chronic and substantial pain"), *overruled on other grounds by WMX Technologies, Inc. v.*
24 *Miller*, 104 F. 3d 1133, 1136 (9th Cir. 1997).  The issue here is whether there is sufficient
25 evidence from which a jury could infer that Dacumos was deliberately indifferent to that
26 need.

27     The state of mind required for deliberate indifference is subjective recklessness;
28 however, "the standard is 'less stringent in cases involving a prisoner's medical needs . . .

because the State's responsibility to provide inmates with medical care ordinarily does not conflict with competing administrative concerns.'" *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012) (quoting *McGuckin*, 974 F.2d at 1060). This second prong is met if the prisoner demonstrates (1) a purposeful act or failure to respond to a prisoner's medical need and (2) harm caused by the indifference. *Id.*

To prevail under the Eighth Amendment, a prisoner need not show that a prison official acted or failed to act believing that harm actually would befall the inmate; "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . , and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. *Id.* The Supreme Court reasoned that if the circumstances suggest that the defendant had been "exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk." *Id.* at 842-43.

The Court finds that there is sufficient evidence from which a jury could find that the risk to Plaintiff was obvious and that, therefore, Dacumos had actual knowledge of the risk. It is undisputed that Plaintiff had MS and that Dacumos is a trained health care professional.[4] The record shows that Plaintiff complained of problems with his balance, that on two occasions Dacumos reviewed those complaints, and that one of the HNRs specifically requested a cane. Plaintiff asserts that he spoke with Dacumos at an unspecified time and that she told him he would have to wait for a cane because ADC did not have canes. Although Dacumos asserts that she does not recall a conversation with Plaintiff regarding his need for a cane or walking device (Doc. 25-1, Ex. B. Dacumos

---

[4] The initial symptoms of MS include weakness or clumsiness of a leg or hand, slight stiffness or fatigability of a limb, and minor gait disturbances. In advanced cases, patients may require a wheelchair. *Merck Manual* Chapt. 184 at 1780-81 (Robert S. Porter et al. eds.,19th ed., Merck Sharp & Dohme Corp. 2011).

- 14 -

1  Decl. ¶ 12), her averment that she does not recall whether Plaintiff talked to her is not
2  competent evidence to show that the discussions did not occur.  Failure to remember
3  factual information, like having a "belief" in factual information, is insufficient because it
4  does not show personal knowledge.  *See Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412-
5  13 (9th Cir. 1995) (declaration on information and belief are entitled to no weight where
6  declarant lacks personal knowledge); *Taylor*, 880 F2d at1045 n. 3.  It is undisputed that
7  she did not issue a temporary SNO, contact a health care provider for immediate
8  evaluation of Plaintiff's need for a cane, or even request in her written "Plan of Action"
9  an emergency evaluation of Plaintiff's need for a cane.  In addition, there are questions of
10 fact regarding the scope of her authority to act.

11 The Court also finds that Dacumos is not entitled to qualified immunity.  A
12 defendant is entitled to qualified immunity on a claim for damages if his conduct "does
13 not violate clearly established statutory or constitutional rights of which a reasonable
14 person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The
15 qualified immunity analysis originally involved two inquiries: whether the facts alleged
16 or shown by the plaintiff establish a constitutional violation and whether the right at issue
17 was clearly established at the time.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The
18 Supreme Court has since held that courts have discretion in deciding which prong to
19 address first and, depending on the circumstances, may bypass the first inquiry and
20 proceed directly to the qualified immunity question.  *Pearson v. Callahan*, 555 U.S. 223,
21 236 (2009).  The "qualified immunity inquiry" asks if the right was clearly established at
22 the relevant time.  *Saucier*, 533 U.S. at 201-02.  This inquiry "must be undertaken in light
23 of the specific context of the case, not as a broad general proposition."  *Id.* at 201.

24 A right is clearly established if its contours are "sufficiently clear that a reasonable
25 official would understand that what he is doing violates that right."  *Kennedy v. City of*
26 *Ridgefield*, 439 F.3d 1055, 1065 (9th Cir. 2006) (quoting *Hope v. Pelzer*, 536 U.S. 730,
27 739 (2002)).  "The relevant, dispositive inquiry . . . is whether it would be clear to a
28 reasonable officer that his conduct was unlawful *in the situation he confronted*."  *Saucier*,

533 U.S. at 202 (emphasis added). The burden is on the plaintiff to show that the right he claims was violated was clearly established. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002). Plaintiff had a clearly established right to adequate medical care.

Defendant argues that she is entitled to summary judgment because the issuance of ambulatory devices has been left up to HCPs. (Doc. 24 at 17.) But this argument on qualified immunity is the same as Dacumos's defense to the constitutional violation and therefore implicates the same genuine issues of material fact concerning the scope of her authority and her duties and, therefore, whether she would reasonably know if her conduct was unlawful. *See Martinez v. Stanford*, 323 F. 3d 1178, 1183-85 (9th Cir. 2003). Qualified immunity will be denied.

### 3. Damages

To the extent that Plaintiff asserts a damage claim against Dacumos in her official capacity, the Court will dismiss it. A suit against a state official in his official capacity is not a suit against the official but rather is a suit against the official's office, so damages are unavailable. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

The Court will not dismiss the punitive damages claim at this time. In *Smith v. Wade*, the Supreme Court held that a jury could assess punitive damages in a § 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." 461 U.S. 30, 56 (1983). In the present case, Defendants argued that Plaintiff cannot meet the burden of proving that each Defendant acted with the requisite evil motive. But the Court has held that there is sufficient evidence of Dacumos's deliberate indifference, which also involves a reckless state of mind, to defeat her request for summary judgment. The request to dismiss claims for punitive damages is premature and will be denied.

**IT IS ORDERED:**

(1) The reference to the Magistrate is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 24.)

1    (2)    Defendants' Motion for Summary Judgment (Doc. 24) **is granted in part and denied in part as follows**:

    (a)    **granted** as to Kendall and Jimenez and as to any official-capacity claim for damages against Dacumos; Kendall and Jimenez are dismissed; and

    (b)    **denied** in all other respects.

(3)    The remaining claim is the claim of an Eighth Amendment violation against Dacumos for failure to provide a cane, including a claim for punitive damages.

(4)    This matter is referred to a Magistrate Judge for the purposes of settlement.

DATED this 22nd day of May, 2013.

_____
Robert C. Broomfield
Senior United States District Judge

- 17 -